IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Richard K. Niemi, et al.,                                         Case No. 3:03CV7512

           Plaintiffs

      v.                                                                 ORDER

NHK Spring Co., Ltd., et al.,

           Defendants

This is a breach of contract and misappropriation of trade secrets case brought by plaintiffs Richard K. Niemi and RKN Technology, LLC (RKN), which Niemi co-owns with his son, Mark Niemi, against defendants NHK Spring Co., LTD (NHK) and New Mather Metals, Inc. (New Mather). I have jurisdiction pursuant to 28 USCA § 1332.

**Background**

In November 1990, Niemi completed development of a new process manufacturing stabilizer bars for automobiles. Shortly thereafter, Niemi approached New Mather to see if it would be interested in the design. New Mather referred Niemi to its Tool Engineer, Denzil Sheckler, allegedly with the understanding that New Mather would keep Niemi's process confidential and not disclose or license it without permission.

Sheckler approved Niemi's process and solicited other companies to manufacture the required tools. Sometime in 1991, New Mather implemented the new process and allegedly enjoyed significant benefit from it.

Plaintiffs' complaint alleges that, in exchange for use of Niemi's design, New Mather would award plaintiffs the exclusive right to perform all future design work. Plaintiffs further claim that New Mather agreed to prevent disclosure of the process without plaintiffs' consent.

Plaintiffs contend that sometime in 1993 or 1994 Al Blackwood of New Mather approached Niemi and the two signed a one paragraph document that provided that neither Niemi nor New Mather would disclose the process to anyone. Contemporaneous with the signing of this document, New Mather allegedly represented to Niemi that he would receive the exclusive and perpetual right to all of New Mather's design work. Niemi would also be afforded the opportunity to quote on the design work from New Mather's parent company, NHK. Finally, the agreement allegedly included a promise that either defendant would form a new partnership with Niemi and his company or New Mather would buy out or merge with his company.

On March 9, 1998, Niemi traveled to New Mather's facility in Toledo. While there, he discovered that eight tools had been designed by another firm. Niemi then met with Ron Malcomb of New Mather, who advised him that the farming out of the design work had likely been done under orders from NHK.

On February 2, 2004, I directed the parties to limit discovery to the issues of whether or not defendants purchased the trade secrets and whether or not plaintiffs instituted reasonable measures to maintain the confidentiality of those secrets. Pending are cross-motions for summary judgment on those issues. In addition, defendant seeks summary judgment on plaintiffs' contract claims on the basis that any contract between the parties contravened the statute of frauds. Plaintiffs, for their part, seek leave to amend their complaint to assert a claim of promissory estoppel.

For the reasons that follow, defendants' motion for summary judgment on plaintiffs' trade secret misappropriation claim shall be granted (and plaintiffs' cross-motion denied). No ruling shall be made on the defendants' statute of frauds claim or plaintiffs' motion for leave to amend their complaint.

## Discussion

### 1. Trade Secret Misappropriation

Plaintiffs claim that the defendants have misappropriated their trade secrets by copying their designs for the manufacture of stabilizer bars. Presently at issue is whether plaintiffs transferred their intellectual property, as embodied and reflected in the designs, and, if not, whether plaintiffs took basic and essential steps to protect the confidentiality of their designs and underlying intellectual property.

#### A. Ownership

New Mather contends that Niemi's claim cannot stand because New Mather purchased the drawings from him and thus is the rightful and unrestricted owner of the drawings.[1] As evidence for this claim, New Mather offer the purchase orders for those designs, which state, in relevant part:

> All tools as used in this paragraph, purchased by Purchaser from Vendor and/or tools furnished by Purchaser to Vendor shall at all times be the property of Purchaser. No legal encumbrances of any kind shall be placed upon such tools. . . . The term "tools" is deemed to include machines, patterns, jigs, fixtures, dies and other similar articles.

(Doc. 71 Ex. C).

This language, New Mather argues, entitles it to the process and any intellectual property rights that go along with it.

---

[1] To the extent that the parties dispute whether or not the process was a trade secret at all, motions as to that issue are premature given my previous discovery orders.

Niemi counters that he was never paid for the alleged trade secrets. Regardless of payment, I am not persuaded that New Mather purchased the intellectual property rights to those designs. The purchase orders speak of tools, not intellectual property. There is no basis, aside from that reference to tools in the purchase orders, for the contention that the parties intended that transfer of the intellectual property rights was to be a part of the transaction. Further, it is at best unclear that even New Mather's alleged purchase of the design would have entitled it to those rights *in toto*. Purchase of a book does not entitle the buyer to pass it off as his own. *See generally Zoller v. Chirgotis*, 520 F. Supp. 847 (D. N.J. 1981).

Plaintiffs, further, have demonstrated that, where a transfer of intellectual property is contemplated, the industry custom and course of dealing between the parties would be to reference specifically any such transfer of intellectual property in the purchase order. The purchase orders at issue deal with the product of the plaintiffs' intellect: namely, designs for tooling and manufacturing of stabilizer bars. Those orders make no mention of the underlying concepts, processes, or other intellectual property giving rise to those designs.

Testimony by Donald Senecal of New Mather confirms the lack of an understanding that transfer of intellectual property was occurring or intended:

Q: It was not your understanding that you were purchasing intellectual property?

A: No.

Q: It was not your understanding that you were purchasing a process of manufacturing?

A: No.

Q: It was not your understanding that you were purchasing any method of manufacturing?

  A: No.

(Doc. 81 at 42).

  I conclude, accordingly, that plaintiffs retained rights to the intellectual property that the design reflected.

### B. Protection of Confidentiality

  In Ohio, "a trade secret cannot be acknowledged as such unless the manufacturer has initiated measures designed to insure the security of those things considered trade secrets." *Valco Cincinnati, Inc. v. N & D Machining Service, Inc.*, 24 Ohio St.3d 41, 47 (1986). To maintain a claim for misappropriation of trade secrets, "a plaintiff is required to present evidence of facts that show . . . precautions which plaintiff has taken to guard the secrecy of the information." *Northeast Ohio College of Massotherapy v. Burek*, 144 Ohio App. 3d 196, 208 (2001).

  Defendants contend that plaintiffs cannot prevail on their trade secret misappropriation claim because plaintiffs failed to take minimally necessary steps to protect the confidentiality of their intellectual property. I agree.

  Plaintiffs present no evidence of any affirmative acts on their part to maintain the secrecy of the designs. Instead, they argue that "[p]laintiffs should be able to rely on New Mather's preventative measures to protect the secrecy of their trade secret." (Doc. 79 at 31). This assertion is entirely at odds with the black-letter law that a plaintiff has an independent obligation to maintain secrecy. *Northeast Ohio*,144 Ohio App. 3d at 208.

  Plaintiffs correctly assert that they need not take every available precaution. The law does not demand absolutes. It does, however, require something more active than blind faith. While New Mather

5

may have undertaken to keep the information confidential from third parties, any such efforts to preserve secrecy were for its own benefit, not to protect the plaintiffs' intellectual property. While plaintiffs' awareness of such measures may have given a measure of comfort, it did not justify their failure to have acted to protect their intellectual property, much less give them legal protection against acquisition or disclosure of such property by others.

Plaintiffs rely on three Illinois cases, *Learning Curve Toys, Inc. v. PlayWood Toys, Inc.*, 342 F.3d 714 (7th Cir. 2003); *Rockwell Graphic Systems, Inc v. DEV Industries, Inc.*, 925 F.2d 174 (7th Cir. 1991); and *Master Tech Products, Inc. v. Prism Enterprises, Inc.*, 2002 WL 475192 (N.D. Ill. 2002), to excuse their failure to protect their trade secrets. These cases are neither binding (as they were decided under the law of a different state) nor particularly helpful to plaintiffs' cause.

In each of those cases, the plaintiffs took some affirmative action, however slight, to protect their trade secrets. In *Master Tech*, the plaintiff obtained a written confidentiality agreement; in *Rockwell* the plaintiff kept its engineering drawings in a vault; in *Learning Curve* the plaintiff obtained written confidentiality agreements and stamped its documents "confidential." Plaintiffs here took none of these actions, nor any other steps to assert and protect the confidentiality of their intellectual property, as embodied and reflected in the designs provided to New Mather.

Plaintiffs' sole contention that they did anything to protect their trade secret is the entirely unsupported allegation that the parties had entered into an oral confidentiality agreement. Plaintiffs have presented no evidence that such an agreement existed, and such an agreement, even if it did exist, likely would be barred by Ohio's Statute of Frauds, O.R.C. § 1335.05.

**2. Statute of Frauds/Motion for Leave to Amend**

Defendants move for summary judgment on plaintiffs' breach of contract claim on the grounds that it is barred by Ohio's Statute of Frauds. Section 1335.05 of the Revised Code, which applies, in the absence of an exception, to the contract at issue in this case,[2] prohibits enforcement of oral contracts, such as this, that cannot be performed within one year.

Plaintiffs respond that the Statute of Frauds can and should be bypassed by the doctrine of promissory estoppel. *See Daup v. Tower Cellular, Inc.*, 136 Ohio App. 3d 555 (1985). Plaintiffs also oppose the motion on grounds of partial performance, quantum meruit, and fraud.

Partial performance does not excuse an oral contract from the statute of frauds. *Dynasty Apparel Indus., Inc. v. Rentz*, 206 F.R.D. 603, 608 n.4.

In view of my prior orders limiting discovery, the additional contentions relating to plaintiff's breach of contract claim are not ripe for adjudication.

Plaintiffs further seek to amend their complaint to add a claim for promissory estoppel. Defendants oppose this motion on both substantive and procedural grounds. Substantively, defendants argue that a claim for promissory estoppel would be futile, as it would be precluded both by the parole evidence rule and Ohio law relating to sophisticated parties. Neither of these arguments is persuasive.

---

[2] In their Reply to Defendants' Brief in Opposition to Plaintiffs' Motion to File an Amended Complaint, plaintiffs argue that O.R.C. § 1301.12 is the applicable statute of frauds. This is incorrect. § 1301.12 applies to the sale of certain forms of personal property, including intellectual property. The contract at issue, both in plaintiffs' breach of contract claim and their proposed promissory estoppel claim is a contract for the opportunity to quote on future design work in exchange for plaintiff's promise that New Mather's use of the designs would be exclusive. As plaintiffs themselves vigorously argue elsewhere, this was not a contract for the sale of intellectual property. Therefore, § 1335.05 is the appropriate statute of frauds.

In Ohio, a plaintiff cannot advance a claim for promissory estoppel when the agreement was an arms length transaction between sophisticated parties. *See Columbus Trade Exchange, Inc. v. AMCA Int'l Corp.*, 763 F. Supp. 946 (S.D. Ohio 1991). Viewing the circumstances most favorably toward the plaintiff, this rule would not be applicable here. Plaintiff runs a small design firm, one which over the course of this dispute was either a sole proprietorship or an LLC formed by Niemi and his son. The jury could find that plaintiff is not the sort of sophisticated businessman for whom the sophisticated party rule was designed.[3]

Plaintiffs' promissory estoppel claim likewise is not barred by the parole evidence rule, which prohibits evidence of other terms or contracts that contradict or alter a written agreement. *Kashif v. Central State Univ.*, 133 Ohio App. 3d 678, 682 (1999).  While there are integrated written agreements between the parties, those agreements are mere purchase orders for parts. Plaintiffs' breach of contract and promissory estoppel claims are based on an alleged oral contracts to perform future design work. Thus, plaintiff bases his promissory estoppel claim on an alleged contract for services. The objects and terms of such contract would be distinct and separate from those of and in the purchase orders. The parole evidence rule, accordingly, does not foreclose plaintiff's promissory estoppel claim.

Plaintiffs' amendment is, however, unquestionably late. There is no reason that this claim could not and should not have been part of the original complaint when it was filed three years ago. Nevertheless, delay alone is insufficient to deny leave to amend. *Wade v. Knoxville Utilities Bd.*, 259 F.3d 452, 458-59 (6th Cir. 2001). Promissory estoppel may be raised in a breach of contract action as

---

[3] This ruling does not foreclose the defendants from seeking to prove, as an affirmative defense, that the plaintiff was, in fact, a sophisticated businessman within the meaning of the sophisticated party rule.

a counter to a statute of frauds defense or it may be a separate cause of action. Thus, the issues that will be raised by the promissory estoppel claim are essentially identical to those raised in the breach of contract claim. Therefore, there is little if any prejudice to defendants and plaintiffs motion for leave to amend shall be granted.

## Conclusion

In light of the foregoing, it is

ORDERED THAT

1) Defendants' motion for summary judgment be, and the same hereby is granted as to plaintiffs' trade secret misappropriation claim; plaintiffs' cross-motion as to such claim is denied;

2) Plaintiff's motion for leave to file an amended complaint be, and the same hereby is granted.

The Clerk shall schedule a status/scheduling conference forthwith.

So ordered.

/s/ James G. Carr
James G. Carr
Chief Judge